USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 22, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
ALIK PINHASOV,

                      Petitioner,

           -v-

UNITED STATES OF AMERICA,

                      Respondent.
------------------------------------------------------------------ X

16-cv-7349 (KBF)
14-cr-0670 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

The Court has reviewed petitioner Alik Pinhasov's pro se petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel.[1] (ECF No. 30; 16-cv-7349, ECF No. 1.) On September 1, 2015, petitioner pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. (Plea Tr. at 30:24.) On January 22, 2016, the Court sentenced petitioner to a term of 48 months' imprisonment to be followed by three years of supervised release, and on April 11, 2016, the Court ordered petitioner to pay $2,314,438.40 in restitution to the victims of his offense.

On January 26, 2016, petitioner appealed his conviction. On June 7, 2016, while his appeal was still pending, petitioner filed a pro se § 2255 petition. On June 10, 2016, this Court denied that petition as premature and directed petitioner to "re-file an appropriate § 2255 petition following the adjudication of his direct

---

[1] Unless otherwise noted, all citations to ECF in this Opinion & Order refer to the docket in case number 14-cr-670.

appeal, within the time prescribed by 28 U.S.C. § 2255(f). (ECF No. 29 at 2.) On August 31, 2016, petitioner moved to stay his appeal pending this Court's determination of his § 2255 petition. (16-cv-7349, ECF No. 3 at 3.) The Second Circuit granted that motion on September 1, 2016 and petitioner filed the instant § 2255 petition with this Court on September 20, 2016. (ECF No. 30).

Petitioner argues that he received ineffective assistance of counsel because his counsel (1) misinformed him about his sentencing exposure and (2) failed to investigate the evidence against petitioner with regards to the loss amount. These arguments are wholly without merit, and for the reasons set forth below, the petition is DENIED.

I. BACKGROUND

Between 2012 and October 2014, petitioner perpetrated a fraud scheme against diamond wholesalers in New York, NY. (Presentence Investigation Report ("PSR") ¶ 7.) Petitioner would obtain diamonds on consignment, assuring sellers that he had a buyer and would return in a matter of hours or days with the money or, if the sale fell through, the diamonds themselves. (Id. ¶ 8.) Most often, petitioner returned neither the diamonds nor any payment. (Id.) If a seller pressed petitioner for money, he wrote checks on bank accounts with insufficient funds—and, in some cases, when his victims went to cash those checks, they not only received no money, they were also fined by the bank for the bounced check. (Id. ¶ 8; ECF No. 22, Sen. Tr. at 39:1–5.) Petitioner pawned some diamonds and used the money to make small, partial payments on debts he owed. (PSR ¶ 9.) In at least a

2

few cases, he also used that money to initiate additional fraudulent transactions by making "down payments" to wholesalers in an effort to obtain more diamonds. (Id.) Moreover, when wholesalers demanded payment, petitioner fraudulently represented that he himself was being defrauded and was the victim of nonpayment by others. (Id.) All told, petitioner caused eight diamond sellers to suffer losses totaling $2,610,071; at least one of his victims lost his business due to petitioner's fraud. (Id. at ¶ 13.)

On March 16, 2015, petitioner was arrested; on March 26, 2018, he was released on bail. He was assigned an attorney from the Criminal Justice Act Panel, Ms. Julia Gatto. On September 1, 2015, petitioner pled guilty pursuant to a plea agreement to one count of wire fraud. (Plea Tr. at 30:24.) During the plea allocution, the Court informed petitioner of his rights, such as, inter alia, the right to a trial by a jury of twelve people and to representation by an attorney at that trial. (Id. at 9–10.) As particularly relevant here, the Court spent some time discussing petitioner's sentencing exposure. Petitioner represented—under oath—that he understood that nobody, including his lawyer, could know what his sentence would be, because that decision was left to the Court. (Id. at 26:18–25.) Petitioner stated that he understood that the statutory maximum for his offense was twenty years, (id. at 15:4–7), and that the Court was not bound by the plea agreement's guidelines sentence stipulation to 33–41 months, (id. at 17:11–20:21). Additionally, the Court confirmed that petitioner signed the plea agreement voluntarily, and that he was not forced or coerced into doing so. (Id. at 25:23–25.)

3

Between petitioner's plea hearing and sentencing, he violated the terms of his release several times; as a result, the Court warned him that it was considering immediate remand if a period of incarceration were imposed. (ECF No. 16, Jan. 18, 2016 Order.) His violations included three curfew violations and a positive test for marijuana; pretrial services also received a report that he attempted to conduct business in the diamond district. (Sen. Tr. at 23:5–17.) At sentencing on January 22, 2016, the Court explained that its own guidelines calculation was also 33–41 months, but—early in the hearing and citing United States v. Cavera, 550 F.3d 180 (2d Cir. 2008)—it informed the parties that it was "seriously consider[ing] an upwards variance from the guidelines" and was "not actually thinking of a guidelines sentence." (Sen. Tr. at 4:9–11; id. at 13:12–15.)

This Court sentenced petitioner to 48 months' incarceration, followed by three years of supervised release. (Id. at 44:13–16.) The Court acknowledged the upward variance, and explained that while the loss amount drives a guidelines calculation, the Court considered a number of factors under § 3553(a), including: the duration of petitioner's illegal activity; the number of diamonds involved; the violation of his victims' trust; the disastrous impact of his fraud on his victims, including one who lost his business; the Court's perceived risk of petitioner reoffending; and petitioner's high number of bail violations, (id. at 32–36; id. at 45). The Court focused in particular on the brazenness and deliberateness of petitioner's crime, and it went through each step of his fraud in detail. (Id. at 37–45.) On April

11, 2016, this Court entered an Order of Restitution in the amount of $2,341,438.40 payable to petitioner's victims. (ECF No. 24, Order of Restitution.)

II. LEGAL PRINCIPLES

No evidentiary hearing is necessary in this action. The combined submissions of the parties provide a sufficient basis upon which to deny the petition, and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its views on the facts alleged by Pinhasov, including the details added in his petition. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (noting that the court need not hold an evidentiary hearing where the combined submissions of the parties provide a sufficient basis to deny the petition).

A. Pro Se Petitions

The Court applies a "liberal construction of [pro se] pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Nevertheless, a Court may dismiss a petition under § 2255 without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255); see also Fed. R. Governing Sec. 2255 Proceedings for the U.S.D.C. 4(b) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the

moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.").

B. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, petitioner "must [first] show that counsel's representation fell below an objective standard of reasonableness," as measured against "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). In addition, he must demonstrate that counsel's "deficient performance prejudiced the defense," id. at 687, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the

6

result would have been different.  Strickland, 466 U.S. at 694.  More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

        C.  Habeas Petitions and Restitution Orders

"[R]estitution orders cannot be challenged through a habeas petition because a monetary fine is not a sufficient restraint on liberty to meet the in custody requirement [of 28 U.S.C. § 2255(a)], even if raised in conjunction with a challenge to a sentence of imprisonment." United States v. Boyd, 407 Fed. App'x 559, 560 (2d Cir. 2011) (internal quotation omitted).  The same goes for orders of forfeiture. Kaminski v. United States, 339 F.3d 84, 87 (2d Cir. 2003) ("§ 2255 may not be used to bring collateral challenges addressed solely to noncustodial punishments . . . because the language of § 2255 is best read as requiring a challenge to custody . . . [and] collateral challenges have historically been permitted through habeas only when an interest as compelling as freedom from custody is at stake.")  This is the case whether or not these claims are brought in conjunction to a challenge to a custodial sentence.  Id. at 89 ("Habeas lies to allow attacks on wrongful custodies.  There is therefore no reason why the presence of a plausible claim against a custodial punishment should make a noncustodial punishment more amenable to collateral review than it otherwise might be.").

III. DISCUSSION

The instant § 2255 petition puts forth two bases for relief: (1) ineffective assistance at the plea stage; and (2) ineffective assistance with regards to the loss calculation.

A. Plea Stage

Petitioner asserts that his counsel was ineffective because she informed him that if he pled guilty, he would likely receive 24–41 months in prison. (16-cv-7349, ECF No. 2, Mot. at 7.) As support for this contention, he points to a list of payments (16-cv-7349, ECF No. 2-1, "Exhibit A"), which purportedly demonstrate that "counsel never gave petitioner correct legal advice." (Mot. at 7.) His argument appears to be that these invoices demonstrate that his sentencing exposure was something other than what Ms. Gatto represented to him before he pled guilty. He also notes that Ms. Gatto pressured him into taking the plea and told him not to "play games." (Mot. at 6.)

However, at his plea allocution, the Court specifically informed petitioner that only the Court could and would determine his sentence. When asked whether he understood that the Court was not bound by the stipulated sentence range in the plea agreement, he answered in the affirmative, as he did when the Court informed him that he could receive up to twenty years in prison. The plea agreement and plea allocution dispositively demonstrate that petitioner was fully informed of his sentencing exposure. Accordingly, he cannot demonstrate that he was prejudiced. The Court will not now credit petitioner's self-serving statements over his previous

8

statements under oath, which carry more credibility. Blackledge v. Allison, 431 U.S. 63, 74 (U.S. 1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see also Gluzman v. United States, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000) ("[C]ourts have been skeptical of accepting a defendant's self-serving, post-conviction statements that he would have pleaded guilty if properly advised of the consequences by his attorney."). The same goes for petitioner's allegation that Ms. Gatto pressured him into pleading guilty—at the hearing, he represented that no one had pressured him to plead guilty. The Court credits that statement over his petition as well.

In an attempt to demonstrate prejudice, petitioner argues that had he understood his sentencing exposure, he would have sought a "binding plea agreement that would have been a win/win for all parties." (Mot. at 11.) But this misses the point—the plea agreement here was not binding on the Court, and there is no factual basis to believe he could have obtained a binding plea agreement or that the Court would have accepted it.

B. Loss Calculation

In an attempt to demonstrate that the loss amount was only $634,090.83, rather than the $2,314,438.40 imposed by the restitution order, petitioner argues that his counsel never "look[ed] into the[] essential facts," (Mot. at 15), and lays out the loss amount, as he sees it, for each of his victims. However, as noted above, a §

9

2255 petition cannot challenge a monetary fine, because it "is not a sufficient restraint on liberty to meet the in custody requirement [of 28 U.S.C. § 2255(a)], even if raised in conjunction with a challenge to a sentence of imprisonment." Boyd, 407 Fed. App'x at 560 (internal quotation omitted). As such, petitioner cannot bring a § 2255 petition claiming that his counsel was ineffective with regard to the loss calculation, as the remedy would serve only to amend the restitution order.

And in any case, at petitioner's plea hearing, he answered in the affirmative when the Court asked whether he "agreed to with the government" that the loss amount "is at least a million or more than a million but less than 2.5 million." (Plea Tr. at 17:4–9.) As such, he cannot demonstrate prejudice based on his attorney's actions with regard to the loss amount calculation.[2]

---

[2] In connection with his motion, petitioner submits a number of exhibits that purportedly demonstrate a different restitution figure; however, these exhibits were not provided to the Government at a previous stage, and their authenticity is unknown.

IV. CONCLUSION

For the reasons set forth above, petitioner's § 2255 motion to vacate, set aside or correct his sentence is DENIED. The Court declines to issue a certificate of appealability, as petitioner has not made a substantial showing of a denial of a federal right. See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012). The Clerk of Court is directed to terminate the petition at 16-cv-7349 ECF No. 1 and 14-cr-670 ECF No. 30 and to terminate 16-cv-7349.

SO ORDERED.

Dated: New York, New York
January 22, 2018

_____
KATHERINE B. FORREST
United States District Judge

Copy To:
Alik Pinhasov
72095-054
F.C.I.—Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640